IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JOHN CRANE GROUP CORPORATION | § § | |
| v. | § § | CIVIL ACTION NO. |
| ENERGY DEVICES OF TEXAS, INC. D/B/A EDI DOWNHOLE PUMPS & SUPPLIES | § § § § | 6:14-cv-178 |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff John Crane Group Corporation ("John Crane") files this Original Complaint, complaining of Energy Devices of Texas, Inc. ("EDI") d/b/a EDI Downhole Pumps & Supplies, and respectfully shows the Court as follows:

### I.

### INTRODUCTION

1. This lawsuit has been necessitated by the sudden and coordinated exodus of John Crane employees at the tortious behest of EDI. John Crane and EDI are direct competitors in the pump shop business, providing oil well services located in Texas, Oklahoma, Montana, and North Dakota. Through this action, John Crane seeks recourse against EDI for their tortious conduct in conjunction with then current and former John Crane employees, when they implemented a plan to induce the abrupt departure of John Crane's employees and as a result, tortiously interfered with John Crane's bid award and business with Enerplus. EDI orchestrated a conspiracy and assisted and encouraged then current and former John Crane employees to make false statements to other John Crane employees to induce the employees to violate their common law duties of

loyalty, fiduciary duties, contractual nondisclosure agreements and contractual nonsolicitation agreements, as well as made false statements to Enerplus and other customers, which resulted in significant economic loss by improperly contacting Enerplus. EDI's actions tortiously and intentionally interfered with pump work services that had already been awarded to John Crane in the Williston Basin, interfered with the employment relationships of John Crane in the face of nonsolicitation covenants and clearly induced violations of established duties of loyalty and good faith, and caused injury to John Crane's reputation and goodwill with customers.

## II.

## PARTIES

2. Plaintiff John Crane is a Delaware corporation with its principal place of business at 227 W. Monroe Street, Ste. 1800, Chicago, Illinois 60606.

3. Defendant Energy Devices of Texas, Inc. is a Texas corporation with its principal place of business located at 303 Park Row St., Van, Texas 75790. EDI's registered agent for service of process is Ron Gabriel, 303 Park Row St., Van, TX 75790.

## III.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5. This Court has personal jurisdiction over EDI, and venue lies in this District under 28 U.S.C. §1391(b) because EDI is incorporated and headquartered in Texas, is a citizen of Texas, and regularly conducts business in this District.

6. John Crane Group Corporation is not incorporated in Texas, nor does it have a principle place of business in Texas, and it is a citizen of another state.

## IV.

## FACTUAL BACKGROUND

7. John Crane owns a global division that is a full service artificial lift provider of sucker rods and down-hole pumps specialized in fit-for-purpose solutions for the oil and gas industry. John Crane acquired the pump shop located in Sidney, MT in March 2007 as a result of an acquisition of another company from Ronald and Brad Gabriel, and the Gabriels are also owners of EDI. John Crane opened the Watford City, ND pump shop after the acquisition.

8. In May 2013, Brad Gabriel entered John Crane's pump shop and solicited John Crane's twelve employees to come and work for him at a competing shop he was planning to open nearby in Sidney, MT. No one left John Crane at that time, but based on information and belief, Mr. Gabriel, conspired, and aided and abetted in inducing and encouraging sixteen John Crane employees from two pump shop locations, by using employees with managerial influence over the employees (such as Papka, Cooley, and Kummer), as well as Damm to breach their duty of loyalty and Papka's nonsolicitation agreement with John Crane over the following months and use them to recruit persons by improper means.

9. John Crane has performed pump repairs and services for Enerplus for a number of years. On or about November 15, 2013, John Crane submitted a bid for Enerplus's Williston Basin operations for down-hole pumps and down-hole pump services located in Montana and North Dakota.

10. Ross Papka, District Manager and current John Crane employee at the time, contacted other John Crane employees beginning in late November 2013, to induce them to leave John

Crane and work for EDI. Papka did so in violation of his nonsolicitation agreement, which prohibits him from soliciting John Crane employees to work for a competitor. Papka and Damm also communicated false information related to bonuses and compensation in an effort to create unrest among employees at multiple John Crane locations, to seek to induce the employees' departure to work for Defendant competitor EDI.

11. On December 6, 2013, John Crane received notice that Enerplus awarded the bid for down-hole pump and pump services to John Crane. The value for the pump work bid award was over $2,000,000.

12. On or about December 9, 2013, the employees at the Sidney pump shop were informed that Enerplus awarded the bid for pump work and services to John Crane.

13. Based on information and belief, Jacob Damm, John Crane's former Area Sales Representative, helped EDI to open a new pump shop in Sidney, MT and he formally went to work for EDI in early December 2013 after his resignation that was effective December 2, 2013.

14. Based on information and belief, Rick Cooley, John Crane's former Assistant District Manager, went to work for EDI at their new Sidney, MT shop in mid-December 2013, after he resigned from John Crane on December 13, 2013.

15. Around this time, Enerplus stated that former John Crane Area Sales Representative, Jacob Damm, had previously called Enerplus to request that Enerplus obtain credit approval with EDI. Customers are commonly required to seek credit approval prior to doing business.

16. EDI knew that John Crane had been awarded the Enerplus bid for pump work based on information improperly shared with EDI by current and former John Crane employees. Based on information and belief, EDI misrepresented facts and made false or disparaging statements to

Enerplus and other customers about John Crane's current or future ability to repair and service pumps at its Sidney shop.

17. Less than two weeks after Enerplus awarded John Crane the bid for pump work, on or about December 17, 2013, Enerplus contacted John Crane and inquired about a "shake up" at the Sidney office and asked John Crane to ensure that it would be able to stand behind its pump products and delivery of such products. At that time, John Crane was unaware of any "shake up" at the Sidney office. Indeed, the two employee departures described above did not impact service levels in any way.

18. On Thursday, December 19, 2013, Cynthia Harris, a John Crane Customer Service Representative at the time, forwarded all of the pump records for every repair John Crane performed on Enerplus oil wells for the prior three months to Enerplus. She had no legitimate basis to do so and was not instructed to forward that information by John Crane.

19. In response to Enerplus' inquiries about a "shake-up," John Crane management met with its Sidney employees and immediately responded to Enerplus to confirm that it had a fully staffed shop and was prepared and ready to perform the new work awarded to John Crane.

20. On Sunday, December 22, 2013, Enerplus communicated to John Crane that it had not necessarily lost the bid award for pumps, but "we are still trying to figure out what happened in Sydney [sic]." At the time of this communication, John Crane had only lost the two employees described above, and all of its repair and service technicians were still employed at John Crane. This was obviously concerning to John Crane, because Enerplus appeared to have information unknown to John Crane. Worse yet, it seemed to know of events that were about to occur, as described below.

21. The following day, on December 23, 2013, EDI signed paperwork registering EDI to do business in the states of Montana and North Dakota. On the same day, Harris resigned from John Crane and went to work for EDI.

22. Shortly thereafter, between December 31, 2013 through January 10, 2014, all but one remaining employee of John Crane's Sidney, MT pump shop resigned and went to work for EDI, without any advance notice. As a result, over the course of approximately one month, EDI had raided twelve of its thirteen employees from John Crane's Sidney shop, hiring them all to work at its newly opened Sidney shop. Among these twelve employees, Papka, former District Manager, who had a nonsolicitation agreement prohibiting direct or indirect solicitation of employees and customers, also went to work for EDI.

23. In addition, John Crane subsequently learned that EDI was awarded the Enerplus bid previously awarded to John Crane. Based on information and belief, other John Crane customers were also contacted and solicited in a tortious fashion.

24. Over the course of the following month, Papka, while working for EDI, induced more employees to leave John Crane. Papka oversaw the construction and opening of EDI's second new pump shop location in the Williston Basin, located in New Town, ND. Current John Crane employee at the time, Travis Kummer, who was the Pump Shop Supervisor at John Crane's Watford City, ND location, worked with Papka to open EDI's New Town location, while Kummer was still employed with John Crane. Kummer violated his on-going duties to John Crane by not only working side-by-side with Papka in overseeing the construction of EDI's newest location, but Kummer also interviewed new employees for EDI's New Town location. Kummer also deliberately sabotaged John Crane's business by refusing to service customers, and ordering unnecessary equipment, thereby incurring unnecessary expenses. EDI had knowledge

of and encouraged this tortious behavior with the specific intent to unfairly compete against John Crane and tortiously interfere with John Crane's business and employment relationships.

25. Based on information and belief, Papka assisted EDI in raiding John Crane's employees yet again, in clear violation of his nonsolicitation agreement and his common law duties. John Crane has recently learned that four of five employees at John Crane's Watford City, ND pump shop resigned the week of February 17, 2014 and went to work for EDI in its recently opened new shop located in New Town, ND.

26. John Crane has multiple Agreements with its employees related to confidentiality, non-disclosure, and non-solicitation at both the Sidney and Watford City pump shop locations, and EDI knew or had reason to know that these Agreements existed and encouraged John Crane employees to breach their agreements. John Crane employees received confidential, proprietary, and trade secret information related to products, services, business and strategic planning, sales and profit figures, customer lists, pricing lists, and bid submissions (hereafter "Confidential Information").

27. Based on information and belief, prior to resigning, John Crane employees Damm and Papka at the behest of EDI, spread false information to create unrest among other employees related to compensation and bonuses. Those employees, as well as Travis Kummer, assisted in soliciting customers and employees on behalf of EDI, while still employed by John Crane and/or while owing an on-going duty of loyalty to John Crane. EDI used Papka's managerial position and influence to improperly induce John Crane's employees to leave, conspiring to raid virtually all of John Crane's employees in two locations, and tortiously interfering with John Crane's employment relationships.

28. John Crane had a master services agreement with Enerplus, and when the bid for pump services and repairs was awarded to John Crane, it had every reasonable anticipation of continued work with Enerplus until EDI improperly conspired, aided, and abetted with Papka, Damm, Cooley, and Harris in committing tortious conduct to divert the pump services and repair work awarded to John Crane under the bid.

29. Based on information and belief, in the months leading up to John Crane employees' abrupt departure at both pump shops, at the encouragement of EDI, Damm, Cooley, Papka, and Kummer deliberately delayed obtaining necessary signatures and submitting outstanding invoices to customers for payment, and did not maintain other business records (such as inventory and other records) in a timely and organized fashion as their job duties required in an effort to unfairly disrupt John Crane's business.

30. John Crane has suffered damages in an amount far exceeding $75,000, and over $1,000,000, and an additional amount to be determined through discovery due to damages related to the lost bid award, lost employees' work time, and other business losses.

## V.

## CAUSES OF ACTION

### COUNT ONE

### Tortious Interference with Perspective Business Relations

31. John Crane repeats and re-alleges each and every allegation made in the foregoing paragraphs 1 through 30 as if fully re-alleged herein.

32. When EDI contacted Enerplus to seek to induce Enerplus to switch from John Crane to EDI, it was aware of John Crane's existing and prospective business relationships with Enerplus

and the bid awarded to John Crane in early December 2013 for pump work for calendar year 2014.

33. EDI improperly raided John Crane's employees and tortiously interfered with John Crane's business through its employee managers in order to dilute John Crane's resources and interfere with John Crane's business relationship.

34. Based on information and belief, EDI encouraged current and former John Crane employees to misrepresent material facts about John Crane's ability to service its customers and disparaged John Crane to Enerplus, to induce Enerplus to transfer the work associated with the bid awarded to John Crane to EDI.

35. EDI's actions constitute independently tortious conduct.

36. Defendant's acts were improper and done for the purpose of causing interference with John Crane's relationships and prospective relationships with its customers.

37. EDI's action, and encouragement of actions by John Crane's now former employees, displays a conscious desire to prevent the business relationship between John Crane and Enerplus from occurring, or EDI knew that the interference with the business relationship was certain or substantially certain to occur as a result of EDI's conduct. Such conduct resulted in damages to John Crane and inured to the direct benefit of EDI, in the approximate amount of $2,000,000.

38. As a result of Defendant's conduct, John Crane has suffered and continues to suffer economic and non-economic damages, including pecuniary and consequential losses, in an amount to be proven at trial.

39. Defendant's tortious conduct was willful and wanton, thereby entitling John Crane to exemplary damages.

## COUNT TWO

### Tortious Interference with Employment Relationships

40. John Crane repeats and re-alleges each and every allegation made in the foregoing paragraphs 1 through 39 as if fully re-alleged herein.

41. When EDI contacted John Crane employees, by and through existing John Crane managers such as Cooley, Papka and Kummer, as well as Damm, EDI was aware of John Crane's employees' ongoing contractual and common law duties to John Crane, and EDI tortiously interfered with those employment relationships.

42. EDI tortiously interfered with John Crane's on-going employment relationships with the employees at the Sidney, MT and Watford City, ND shops by encouraging the spreading of false statements about bonuses and compensation and induced those employees to abruptly leave John Crane.

43. As a result of Defendant's conduct, John Crane has suffered and continues to suffer economic and non-economic damages, including pecuniary and consequential losses, in an amount to be proven at trial.

44. Defendant's tortious conduct was willful and wanton, thereby entitling John Crane to exemplary damages.

## COUNT THREE

### Tortious Interference With Contractual Relations

45. John Crane repeats and re-alleges each and every allegation made in the foregoing paragraphs 1 through 44 as if fully re-alleged herein.

46. John Crane had valid common law, fiduciary, or contractual commitments of nondisclosure, confidentiality, and non-solicitation with multiple employees to protect the

information and use it only for the benefit of John Crane. Specifically, Papka was prohibited during and after employment from directly or indirectly soliciting John Crane employees for a period of twelve months and from directly or indirectly soliciting John Crane current or potential customers for a period of six months. Papka and all John Crane employees further agreed and had a duty not to disclose, divulge, or use in any manner any such confidential, proprietary, trade secret information. These restrictions against disclosure, under the Agreements, are in full force and effect forever and shall survive any termination of employment with John Crane, whether voluntary and involuntary.

47. Based on information and belief, EDI, was aware or had reason to know of those contracts and of John Crane's employees' continuing obligations under the Agreements.

48. Subsequently, EDI willfully and intentionally interfered with the Agreements by seeking John Crane's employees' assistance in setting up competing businesses and causing and encouraging John Crane's current and former employees to solicit and take away business from John Crane's customers, and disclose confidential information, all of which constitutes a breach of the Agreements by John Crane's former employees of Sidney, MT and Watford City, ND.

49. EDI used John Crane's managers and Confidential Information to induce each of the aforementioned employees to abruptly quit working for John Crane for increased compensation and/or other benefits or a total increased employment package.

50. EDI's acts were improper and done for the purpose of causing John Crane's former employees to breach their Agreements with John Crane.

51. As a result of EDI's conduct, John Crane has suffered and continues to suffer economic and non-economic damages, including but not limited to the cost of recruiting and training new

employees, and other damages such as pecuniary and consequential losses, in an amount to be proven at trial.

52. EDI's tortious conduct was willful and wanton, thereby entitling John Crane to exemplary damages.

## COUNT FOUR

### Misappropriation/Disclosure of Confidential Information

53. John Crane repeats and re-alleges each and every allegation made in the foregoing paragraphs 1 through 52 as if fully re-alleged herein.

54. During the employees' employment with John Crane, the employees were provided with and received substantial proprietary and Confidential Information of John Crane as outlined in the Agreements. Specifically, "Confidential Information" consisted of technology, trade secrets, products, services, business and strategic planning, sales and profit figures, customer and potential customer lists, pricing lists, and bid submissions. Upon information and belief, the former employees have given or intend to give this information to EDI and have and will continue to use at the behest of, with encouragement of and for the financial benefit of EDI.

55. The use of John Crane's proprietary and Confidential Information by EDI, by and through now former John Crane employees, constitutes a willful, malicious and intentional misappropriation by EDI of John Crane's proprietary business information and is intended by EDI to cause present and ongoing harm to John Crane. Upon information and belief, EDI, through John Crane's former employees, have used and continue to use the aforementioned confidential and proprietary information to unfairly compete with John Crane.

56. As a result of John Crane's former employees' conduct, John Crane has suffered and will continue to suffer irreparable injury, as well as economic and non-economic damages, including pecuniary and consequential losses, in an amount to be proven at trial.

57. EDI's tortious conduct was willful and wanton, thereby entitling John Crane to exemplary damages.

## COUNT FIVE

### Conspiracy

58. John Crane repeats and re-alleges each and every allegation made in the foregoing paragraphs 1 through 57 as if fully re-alleged herein.

59. Defendant knowingly encouraged, participated in, and benefited from the foregoing tortious and other wrongful conduct described herein. A civil conspiracy exists under the facts alleged in this Complaint because there are two or more persons acting in collusion to accomplish an unlawful purpose and/or to accomplish a lawful purpose by unlawful means. The Defendant further had a meeting of the minds on the object or course of action to be accomplished.

60. Upon information and belief, Defendant engaged in a civil conspiracy with John Crane's now former employees, to unfairly compete with John Crane, and to tortiously interfere with John Crane's on-going and perspective business relationships, on-going employment relationships, and on-going contractual agreements. EDI further induced employees to share Confidential Information related to the bid awarded to John Crane by Enerplus.

61. Defendant's civil conspiracy has caused and will continue to actually and proximately cause John Crane to suffer economic and non-economic damages, including pecuniary and consequential losses, in an amount to be proven at trial.

62. Defendant's tortious conduct was willful and wanton, thereby entitling John Crane to exemplary damages.

## COUNT SIX

### Aiding and Abetting

63. John Crane repeats and re-alleges each and every allegation made in the foregoing paragraphs 1 through 62 as if fully re-alleged herein.

64. EDI had knowledge that John Crane employees had an on-going duty to serve John Crane while employed by John Crane and knowledge of their intent to violate that duty. EDI further had knowledge of Papka's Nonsolicitation Agreement and his intent to breach that Agreement, which prohibits him from soliciting employees or customers either indirectly or indirectly. EDI further had knowledge that these activities constituted tortious conduct.

65. EDI intentionally encouraged and assisted Papka, Kummer, Damm, Cooley, and Harris to violate these obligations resulting in tortious conduct which caused injury to John Crane. EDI's actions were a substantial factor in causing the tortious behavior, so that EDI could open its two new pump locations in the Williston Basin to the detriment of John Crane by taking all of John Crane's employees, tortiously interfering with John Crane's business relationship and awarded bid with Enerplus, and the good will generated with John Crane's customers.

66. EDI's actions have resulted in John Crane's loss of approximately $2,000,000 related to the Enerplus bid originally awarded to John Crane that was subsequently usurped by EDI, as well as other damages related to loss of customers and employees.

67. Defendant EDI's aiding and abetting has caused and will continue to actually and proximately cause John Crane to suffer economic and non-economic damages, including pecuniary and consequential losses, in an amount to be proven at trial.

68. Defendant's tortious conduct was willful and wanton, thereby entitling John Crane to exemplary damages.

## VI.

## RELIEF REQUESTED

John Crane Group Corporation requests that this Court enter a judgment in its favor and against Energy Devices of Texas, Inc. awarding compensatory and punitive damages to John Crane and any further relief, at law or in equity, to which it may show itself justly entitled.

Dated: March 14, 2014                        Respectfully submitted,

                                                               /s/ Ron Manthey
                                                             Ron Manthey
                                                             Texas Bar No. 12927400
                                                            ron.manthey@morganlewis.com
                                                            MORGAN, LEWIS & BOCKIUS LLP
                                                            1717 Main Street, Suite 3200
                                                            Dallas, Texas 75201
                                                            Telephone: 214.466.4000
                                                            Facsimile: 214.466.4001

                                                            Erin O'Driscoll
                                                            Texas Bar No. 24041610
                                                            Federal Bar No. 582983
                                                            MORGAN, LEWIS & BOCKIUS LLP
                                                            1000 Louisiana, Suite 4000
                                                            Houston, Texas 77002
                                                            (713) 890-5000 Telephone
                                                            (713) 890-5001 Facsimile

                                                            ATTORNEYS FOR PLAINTIFF
                                                            JOHN CRANE GROUP CORPORATION

DB1/ 78160134.1